Magistrate Judge Donohue

```
____ FILED      ____ ENTERED
____ LODGED     ____ RECEIVED
```

NOV 25 2009

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>    v.<br><br>JASON STEADMAN,<br><br>  Defendant. | CASE NO. MJ09-579<br><br>COMPLAINT for VIOLATION<br><br>Title 18, U.S.C.<br>Section 1038<br><br>09-MJ-00579-CMP |

BEFORE, JAMES DONOHUE, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (Sending Threatening Hoax Letters)

On or about October 3, 2009, at Seattle, within the Western District of Washington, JASON STEADMAN knowingly did engage in conduct with intent to convey false or misleading information, where such information may reasonably be believed and where such information indicated that an activity has been, is taking, or will take place that would constitute a violation of Section 2332a of Chapter 113B (Terrorism)) of Title 18 United States Code, to wit: mailing a letter, through the United States Post Office, from Seattle, Washington to the Seattle Times Office, Seattle

COMPLAINT/ STEADMAN- 1
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Washington, which contained a white powdery substance which reasonably led the recipient to believe that the substance was a biological agent and toxin capable of causing death and other biological malfunction in a human.

All in violation of Title 18, United States Code, Section 1038(a)(1).

## COUNT 2

**(Mailing Threatening Communications)**

On or about October 3, 2009, at Seattle, within the Western District of Washington, JASON STEADMAN knowingly, did cause to be sent and delivered by the Postal Service according to the direction thereon, a written communication, addressed to G.A. containing a threat to injure the person of G.A., that is, kill him.

All in violation of Title 18, United States Code, Section 876(c).

## COUNT 3

**(Mailing Threatening Communications)**

On or about October 3, 2009, at Seattle, within the Western District of Washington, JASON STEADMAN knowingly, did cause to be sent and delivered by the Postal Service according to the direction thereon, a written communication, addressed to L.B. containing a threat to injure the person of L.B., that is, kill him.

All in violation of Title 18, United States Code, Section 876(c).

## COUNT 4

**(Mailing Threatening Communications)**

On or about October 3, 2009, at Seattle, within the Western District of Washington, JASON STEADMAN knowingly, did cause to be sent and delivered by the Postal Service according to the direction thereon, a written communication, addressed to J.T. containing a threat to injure the person of J.T., that is, kill him.

All in violation of Title 18, United States Code, Section 876(c).

## COUNT 5

**(Mailing Threatening Communications)**

On or about October 3, 2009, at Seattle, within the Western District of Washington,

COMPLAINT/ STEADMAN- 2
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  JASON STEADMAN knowingly, did cause to be sent and delivered by the Postal Service
2  according to the direction thereon, a written communication, addressed to M.S.
3  containing a threat to injure the person of M.S., that is, kill him.
4      All in violation of Title 18, United States Code, Section 876(c).
5      And the complainant states that this Complaint is based on the following
6  information:
7      I, K. Erika Jensen, being first duly sworn on oath, depose and say:
8      1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI)
9  and have been so employed since September 2008. Prior to my employment with the FBI
10 I worked in various areas of biology ranging from research, continuing medical education
11 and laboratory work. I am currently assigned to the Seattle Division of the FBI. I am a
12 Weapons of Mass Destruction (WMD) assistant coordinator on the domestic terrorism
13 squad which contributes to the Joint Terrorism Task Force.
14     2.    This complaint is based on my own investigation, as well as information
15 provided to me, and my review of reports prepared by, other law enforcement personnel.
16 This complaint does not include everything I learned during the investigation, but only
17 that information sufficient to show probable cause.
18     3.    In early October 2009, the FBI began investigating the defendant, Jason
19 Steadman, for a series of harassing and threatening acts against the Seattle Times
20 newspaper (hereafter "Seattle Times") and employees of Penske Logistics (hereafter
21 "Penske"). Steadman is an employee of Penske. I learned the following from the Seattle
22 Times:
23     a.    On July 18, 2008, Jason Steadman began employment with the
24 Seattle Times. On October 31, 2008, Steadman was hired as a driver for Penske
25 Logistics. On May 3, 2009, Steadman accepted a position as dock clerk with Penske.
26     b.    On September 8, 2009, Steadman was injured on the job at a drop
27 site located at 130 E. Fairhaven Avenue, Burlington, Washington. Steadman provided a
28 handwritten injury report to his supervisor detailing the events of his injury. After

COMPLAINT/ STEADMAN- 3
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 | reviewing the incident, Penske determined that Steadman contributed to his injury by
2 | committing a safety violation.

3     c.     On September 19, 2009, Alfred Groves and Gary Pennock, both
4 supervisors at Penske Logistics, gave Steadman a five day suspension from work and a
5 final written warning for the safety violation. Steadman was unhappy with this
6 suspension.

7     d.     Following this suspension, on September 25, 2009, Steadman filed
8 numerous grievances toward Penske through the Teamsters Local Union no. 174. The
9 grievances filed included a request for the following: to restore his employee dock
10 coordinator duties; change work schedule; take state mandated lunch breaks; maintain
11 safe working conditions at drop sites; and request for suspension be removed due to lack
12 of just cause.

13     e.     On October 5, 2009, it was discovered that someone had vandalized
14 the bathrooms in the VMF by stuffing paper towels in the sink drain and the toilet bowls.
15 The person then intentionally left the sink faucets running so as to cause a flood.

16     f.     On October 9, 2009, Penske Logistics had conducted an internal
17 investigation related to the bathroom damage mentioned above. This investigation
18 focused attention on the last employees to leave the building the morning of October 5,
19 2009.

20     g.     In reviewing the security video for the VMF, Penske learned that
21 Steadman was the last person to go upstairs to the second floor where the bathroom sinks
22 had been clogged with towels. Key access records at the VMF showed Steadman as the
23 last person inside the VMF before the vandalism was discovered on the morning of
24 October 5, 2009.

25     h.     On October 9, 2009, Steadman was interviewed about the events of
26 October 5, 2009, by Gary Pennock and Alfred Groves, supervisors for Penske. During
27 the interview, Steadman stated that he could not remember that night and refused to
28 answer any more of Pennock and Groves' questions. Following the interview, Pennock

COMPLAINT/ STEADMAN- 4
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  and Groves informed Steadman that he was suspended as a result of this meeting until the
2  investigation was concluded.
3        i.      On October 10, 2009, Penske received signed statements from Barry
4  Merritt and Jeffrey Mitchell from their investigation of the VMF bathroom incident. Both
5  employees reported that at approximately 4 a.m. on October 5, 2009, there was no
6  damage to the bathrooms and Jason Steadman was the last employee at the VMF that
7  night.
8     4.     On October 5, 2009, the Seattle Times received a threat letter at their post
9  office box in Seattle, Washington. The envelope contained an unknown white powder and
10 a typed letter which appeared to have been typed on a computer. The letter read:
11       *I WILL KILL YOU.*
12       *Don't Fuck with the Penske logistics mother fucker.*
13       *Thanks,*
14       *Gary Pennock, Alfred Groves, Timothy Otis, Richard*
15       *Halos, Courtney Crouch.*
16    5.     The sender had handwritten on the envelope, in blue ink, *"Seattle Times,*
17 *P.O. Box 70, Seattle, WA  9811."* The letter was discovered when a mail clerk at the
18 Seattle Times main office located at 1120 John Street, Seattle, Washington, opened the
19 letter.
20    6.     The Seattle Police Department and the Seattle Fire Department's Hazardous
21 Materials Response Team responded to the Seattle Times' office. The Seattle Times mail
22 room was evacuated and access was closed to that area until cleared by the Hazmat Team.
23    7.     The threat letter was mailed in a legal sized envelope which had a first
24 class, Forever, United States postage stamp with a Liberty Bell. The envelope was date
25 stamped *"03 OCT 2009 PM 3L"* indicating it was processed by the United States Postal
26 Service on that date.
27    8.     The Seattle Fire Department Hazardous Materials Team conducted a series
28 of field tests indicating that the material was not harmful and likely a carbohydrate. With

COMPLAINT/ STEADMAN- 5
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

coordinated direction from the FBI WMD Operations Unit II, the envelope, letter and white powder sample were packaged and transported by Seattle FBI assistant WMD coordinators to the Washington State Department of Health (WSDOH) laboratory at 1610 NE 150th Street, Shoreline, Washington for further analysis. It was subsequently determined that the substance was cornstarch.

9. Approximately three hours, after the discovery of the first threat letter, the FBI was contacted by the Seattle Times and informed that four other letters had been received at the VMF in Bothell, Washington. These four letters contained an unknown powder substance.

10. The Seattle Times was instructed to call 911 and request response from the Fire Department HazMat team and the police department. The four unopened envelopes had been contained in a plastic bag and were isolated in a closed office. Todd Bailey, of the Eastside HazMat Team, conducted a radiological test and explosives test of the letters without removing them from the bag or opening the envelopes. The letters tested non explosive and non radiological.

11. These four letters were addressed to the Seattle Times at the Bothell, Washington address with attention to four individuals: *G.A., L.B., J.T., and M.S.*, respectively. These individuals were later identified as managers of respective departments at the facility for The Seattle Times and Penske Logistics.

12. Similar to the first letter, these letters were mailed in a legal sized envelope which had a first class, Forever, United States postage stamp with a Liberty Bell. The envelopes were date stamped "*03 OCT 2009 PM*" from Seattle, Washington. The handwriting on these envelopes was similar to the first envelope which contained the threat letter received earlier that day by the Seattle Times. Also, each of these envelopes contained a letter identical to the first threat letter received by the Seattle Times. These letters also appeared to have been produced from a word processing program on a computer.

13. The envelopes were packaged and transported to the WSDOH laboratory

COMPLAINT/ STEADMAN- 6
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 | for further analysis. The WSDOH laboratory informed the Seattle FBI that the
2 | preliminary tests on the white powder substance in the first letter indicated the substance
3 | was cornstarch.

4 |       14.    On October 6, 2009, the Seattle FBI received a telephone call again from
5 | the Seattle Times located at 1120 John Street, Seattle, Washington. The Seattle Times
6 | stated that a single envelope similar to the previous envelopes was received at their
7 | facility. Seattle Fire Department/ HazMat Team and Seattle Police Department were
8 | already on scene when the WMD assistant coordinators arrived. The envelope was
9 | addressed to Seattle Times, 1120 John Street, Seattle, Washington, 98109. The letter was
10 | mailed in a legal sized envelope which had a first class, Forever, United States postage
11 | stamp with a Liberty Bell. The envelope was date stamped "*03 OCT 2009 PM*" from
12 | Seattle, Washington. The handwriting on this envelope was similar to the handwriting on
13 | the previous five threat letter envelopes. This envelope contained a typed written letter
14 | with the identical message as the original letter received by the Seattle Times located
15 | downtown. This letter also appeared to have been produced by a word processing
16 | program on a computer.

17 |       15.    On this date, Steadman had called in another personal day for his scheduled
18 | shift and notified Gary Pennock that he was filing a lawsuit against Horton's Drug Store
19 | (130 E. Fairhaven Avenue, Burlington, Washington) for poor lighting conditions.

20 |       16.    The Seattle Fire Department conducted a series of field tests indicating that
21 | the material was not harmful. The envelope was packaged and transported to the
22 | WSDOH laboratory for further analysis.

23 |       17.    The WSDOH laboratory advised the preliminary tests on the four envelopes
24 | from the Bothell location indicated they were non explosive, non radiological, and
25 | contained the same white powder. Lab personnel further advised that the substance was
26 | cornstarch.

27 |       18.    On October 13, 2009, Steadman was terminated from his position at Penske
28 | Logistics for failing to provide an accurate account of his October 4-5 shift.

COMPLAINT/ STEADMAN- 7
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    19.    On October 18, 2009, Kent Police Department responded to a reported vandalism at the Seattle Times distribution site located at 6600 South 231 Street, Kent, Washington. White spray paint had been used to write two messages. The message on the building's wall stated, "*Fuck you 1 425 489 7067 Gary Pennock.*" The other message on the nearby utility box stated, "*Fuck Gary Pennock 1 425 489 7067.*" This facility does not require key card access and the area painted was the only location not covered by video surveillance. The phone number in the message belongs to Alfred Groves.

21.    I showed images of two of the envelopes which contained the threat letters to Penske's operations manager, Gary Pennock and Alfred Groves who are both familiar with Steadman's handwriting. Both Pennock and Groves identified the handwriting on the envelopes as being similar to Steadman's.

22.    Agents compared the verbiage and handwriting on the envelopes of the threat letter with Steadman's employment application and injury report. The handwriting and verbiage in these documents were similar, that is, it appears individual letter comparisons match up between Steadman's known handwriting and the threat letters. For example, Steadman uses the capital letter "N" in his employment application 101 of 101 legible times. In one of the addressed threat letters a capital "N" was used five out of five times. Steadman will randomly capitalize parts of words/names such as his own first name he writes "JASON" and his last name "SteadmaN." In one white powder threat letter the writer addresses it to "SEATtLE times." In another white powder threat letter the writer addresses it to "SeatTLE TimES." Specific numbers, to include 6 and 8, are also very similar. Also, on his employment application, he wrote out the name "LARRy Bretz". This is very similar to the name on one of the threat letters mailed to the VMF location which was written as "LARRy Bretz". These letters have been sent off to the FBI Laboratory for further analysis.

23.    Gary Pennock advised me that he, Alfred Groves, and another Penske employee, Richard Halos, had recently received email confirmations, at their work email addresses, for magazine subscriptions that they did not sign up for. The email

COMPLAINT/ STEADMAN- 8
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 confirmations list Pennock, Groves, and Halos' work address as the location to receive
2 the magazines. Pennock further advised that he also received an email confirming his
3 membership to Gay.com which is an online dating service for homosexual males.
4 Pennock learned that someone, without his authorization, had set up an online account at
5 this website for him. Pennock is not gay.

6     24. I learned that on November 13, 2009, someone placed a magazine
7 subscription for Alfred Groves through Mags4Cheap, an online magazine subscription
8 service. Also, on November 13, 2009 and November 17, 2009, someone had placed a
9 magazine subscription for Groves through Publisher Clearing House's online magazine
10 subscription service; also on November 13, 2009, a magazine subscription was made for
11 Richard Halso from Publisher Clearing House's online magazine subscription service.
12 On November 13, 2009, at 1:03 and 1:04 am, someone had placed magazine subscriptions
13 for Gary Pennock with MagazineLine, an online magazine subscription service.
14 Steadman knew Grove's and Pennock's work email and work address.

15     25. I contacted Publisher Clearing House and learned that IP address
16 76.104.182.161 was used to place the two orders for Groves and Richard Halos on
17 November 13, 2009. This IP address also was used to open the account for the Gay.com
18 membership. IP address 76.104.182.161 belongs to Comcast.

19     26. On November 23, 2009, I learned from Comcast that on November 13,
20 2009, IP address 76.104.182.161 was assigned to Jennifer Steadman and listed a service
21 address of 12316 28th Avenue N.E., Apt. 101, Seattle, Washington.

22     27. I have confirmed that the defendant resides at 12316 28th Avenue N.E.,
23 Apt. 101, Seattle, Washington, and that Jennifer Steadman is his wife.

24     28. On November 24, 2009, myself and other FBI agents served a search
25 warrant at the defendant, Jason Steadman's, residence, 12316 28th Avenue N.E., Apt 101,
26 Seattle, Washington. The defendant was present and gave consent to search his personal
27 computer. The computer was taken and has been imaged.

28     29. While at the residence, I spoke with the defendant's wife, Jennifer

COMPLAINT/ STEADMAN- 9
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Steadman who stated that at some time either shortly before or after news reports of the
2  threat letters to the Seattle Times, Ms. Steadman noticed that their box of cornstarch,
3  which was relatively new, had been thrown in the garbage.
4      30.   Also, during the search the FBI recovered a can of white spray paint.
5      31.   Based upon the above, I believe there is probable cause to believe that the
6  defendant, Jason Steadman, committed the offenses of Sending Hoax letters and Mailing
7  Threatening Communications, in violation of Title 18, United States Code, Section 1038
8  and Section 876, respectively.

K. ERIKA JENSEN, Complainant
Special Agent, Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 25th day of November, 2009.

JAMES P. DONOHUE
United States Magistrate Judge

COMPLAINT/ STEADMAN- 10
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970